## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**RANDY SCHAFER; et al.**

**PLAINTIFFS**

**VS**                                        **4:10-CV-167**

**BAYER CROPSCIENCE LP; et al.**

**DEFENDANTS**

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
## EMERGENCY MOTION TO REMAND

COME NOW the Schafer Plaintiffs in the above-style case and in response to the

Defendants' Opposition to Plaintiffs Motion to Remand, state as follows:

1.    The general one year rule applicable to this case dictates that this case is not

removable and should be remanded as federal courts are courts of limited

jurisdiction and all doubts about federal jurisdiction should be resolved in favor of

remand.  *Dahl v. R.J. Reynolds Tobacco Co.,*  478 F.3d 965, 968 (8th Cir. 2007).

Title 28 U.S.C. 1446 provides as follows:

> (b) The notice of removal of a civil action or proceeding shall be filed within
> thirty days after the receipt by the defendant, through service or otherwise, of
> a copy of the initial pleading setting forth the claim for relief upon which such
> action or proceeding is based, or within thirty days after the service of
> summons upon the defendant if such initial pleading has then been filed in
> court and is not required to be served on the defendant, whichever period is
> shorter.
> **If the case stated by the initial pleading is not removable, a notice of**
> **removal may be filed within thirty days after receipt by the defendant,**
> **through service or otherwise**, of a copy of an amended pleading, motion,

order **or other paper** from which it may first be ascertained that the case is one which is or has become removable, **except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.**

2.    The *Norman* case referenced in Plaintiffs' Emergency Motion for Remand clearly stated the rationale and congressional intent behind on the one year rule:

> For purposes of the removal statute, the proper interpretation of the phrase "commencement of the action" turns on the proposition that *cases* are removable, not separate claims and **not individual defendants**.    Although this premise appears simplistic, it is fundamental.
> ….
> If the Court construed § 1446(b) as permitting removal at any time as long as within one year of the latest party-joinder, then a case could conceivably be removable years after its commencement, tempered only by plaintiffs' inability to join a defendant outside the limitation of actions.    This result not only stretches the statutory language to a textually unrecognizable extreme but also subverts the very rational of the one-year limitation: to prevent the disruption of removal where a state court has made substantial progress in a case." H.R. Rep. No. 889, 100[th] Cong., 2d Sess. 72 (1988), U.S. Code Cong. & Admin. News 1988 pp.5982, 6032.

*Norman v. Sundance Spas, Inc.*, 844 F.Supp. 355, 358-359 (W.D. Ky. 1994).

Removal at the time all counsel and parties are in town for trial, would cause severe disruption in the litigation of this matter.  The Lonoke County Circuit Court has presided over this case for nearly four years.   The Court has ruled on numerous discovery disputes, negotiated with fellow judges to move calendars to obtain a large courtroom for a month long trial setting.  The Court has summoned over 200 jurors specially for this case.  The Court has ruled on the exclusion of experts and was in the process of ruling on eight banker's boxes worth of summary judgment and pre-trial motions in order to start jury selection and trial

this week, when Bayer removed this case for the third time.   All of this effort would be have to be duplicated and the parties required to start over and spend thousands of hours preparing for a new trial setting in Federal Court.

3.   All of the cases cited by Defendants in support of their argument against the application of the one year rule are class action CAFA cases.  As explained in Plaintiff's reply on the prior removal, the class action CAFA cases address a distinct issue unique to CAFA that does not impact the general rule of 28 U.S.C. § 1446(b). Ex. 3 to Doc. 2. P.6-7. (The distinct issue is whether a post-CAFA amendment commences a new action **for CAFA purposes** is a question of state law).  Bayer asks the Court to expand the general 1 year timeliness rule beyond these class action CAFA cases.   This issue was expressly addressed and rejected by Eastern District of Louisiana, which found *Braud* limited to CAFA cases and not altering the general one year timeliness rule. *Dominion Exploration Prod. Inc. v. American Int'l Corp.*, 2007 WL 4233562 (2007)(attached hereto for the Court's convenience); accord, *Seefield v. Grey Wolf Inc.,* 2009 WL 129613 at * 2-3 (W.D. La. 2009) (finding that CAFA has its own specific rules regarding removal and the absence of any indication by the *Braud* court to extend its holding beyond CAFA cases to abrogate the general first defendant rule) (also attached for the Court's convenience).    Other than CAFA cases, Defendants cite no cases responsive to plaintiffs' argument, and finding in *Ligerwood*, that for purposes of 28 U.S.C. § 1446(b) ("more than 1 year after commencement of the action") "all of the courts that have squarely addressed this issue have held that 'commencement of the action' refers to the date on which the case originally

commenced." *Ligerwood Public School v. Cole Papers, Inc. of Fargo, North Dakota,* 2003 WL 288469 *2 (D.N.D. Feb. 7, 2003).

4.  Defendants make disparaging allegations that Plaintiffs fraudulently joined Riceland to defeat diversity. These statements are not true.  Plaintiffs sued Riceland and conducted significant document and deposition discovery against Riceland for several years including depositions in the States of Arkansas, Alabama and Arizona.  It was after conducting this discovery and digesting it, that Plaintiffs counsel determined that Bayer, and not Riceland created this problem with genetically modified rice and the case was appropriately focused on Bayer. Other counsel pursuing these cases, kept Riceland as a defendant in their cases. Earlier this month, the case of *Kyle v. Bayer A.G. et al.*, was submitted to the jury in Woodruff County on claims against both Bayer and Riceland.  The Jury returned a verdict against Bayer for the Plaintiff and not against Riceland.  Thus, the court found a submissible case against Riceland, but as Plaintiffs' counsel anticipated after much discovery, the jury did not return a verdict against Riceland.  Therefore, the joinder of Riceland was not fraudulent.

5.  At the time Riceland was dismissed, the one year rule had already passed and the case was not removable.  The addition or not of Garner and Little Twist was unnecessary for State Court jurisdictional purposes at the time Riceland was dismissed.  In fact, in the second motion to remand, Plaintiffs argued that the one year ruled prevented federal jurisdiction.  However, the Court's opinion on remand did not address the issue.

6.    Despite Defendants' implication, Plaintiffs did not make any statements about Garner's or Little Twist's residency in their remand papers related to Bayer's second removal. *See* Doc. 2, Exhibits 1 & 3. Defendants' remark is nothing more than an attempt to smear counsel.

7.    The Bayer Defendants' removal is further barred by the thirty (30) day limitation in 28 U.S.C. § 1446(b). Bayer claims that it discovered the two non-diverse plaintiffs were not properly connected to the Lonoke County in a deposition of the New York Plaintiff. Defendant's brief conveniently leaves out the date of the deposition stating only "[i]n discovery after remand, the corporate representative of the New York Plaintiffs stated that the New York Plaintiffs farmed in Mississippi, Crittenden, and Cross Counties, and not in Lonoke County" Doc. 5. P. 6. That deposition was taken on January 22, 2010. *See* Deposition cover page of Al Garner attached as exhibit 1. Significantly, Bayer did not attempt a removal at that time, but waited until the eve of trial, well past the thirty (30) day time frame in 28 U.S.C. § 1446(b).

8.    Defendants' removal must also be denied based on the "voluntary-involuntary" rule, a federal common-law principal that only a voluntary action of a plaintiff, such as the voluntary dismissal of a diversity-defeating party, can make a case removable in diversity jurisdiction. This rule and its basis is thoroughly examined in *Vogel v. Merck & Co, Inc.*, 476 F.Supp.2d 996 (S.D. Ill. 2007), which explained as follows:

> As a further basis for remand, the Court concludes that the removal of this case violates the so-called "voluntary-involuntary" rule, the federal common-law principle that only a voluntary action

of a plaintiff,  such as the voluntary dismissal of a diversity-defeating party, can make a case removable in diversity jurisdiction. *See Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 281, 38 S. Ct. 237, 62 L. Ed. 713 (1918) ("[C]onversion [of an action from  non-removable to removable in diversity] can only be accomplished ... where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by [a plaintiff] of a party or of parties defendant."); *American Car & Foundry Co. v. Kettelhake*, 236 U.S. 311, 316, 35 S. Ct. 355, 59 L. Ed. 594 (1915) ("[W]here there is a joint cause of action against defendants resident of the same state with the plaintiff and a nonresident defendant, it must appear, to make the case a removable one as to a nonresident defendant because of dismissal as to resident defendants that the discontinuance as to such defendants was voluntary on the part of the plaintiff[.]"); *Powers v. Chesapeake & Ohio Ry. Co.*, 169 U.S. 92, 101, 18 S. Ct. 264, 42 L. Ed. 673 (1898) ("[W]hen th[e] plaintiff [voluntarily] discontinued his action as against the [non-diverse] defendants, the case for the first time became such a one as ... the [diverse] defendant ... was entitled to remove[.]"). This Circuit is among those which hold that the judicially-crafted voluntary-involuntary rule remains viable in the context of removal to federal court. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71-72 (7th Cir. 1992) ("[C]ases with non-diverse parties [do] not become removable just because a non-diverse defendant [is] dismissed from the case .... Instead, ... such suits [are] removable only if the plaintiff voluntarily dismissed a non-diverse defendant.") (emphasis omitted). *See also Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir. 1988); *In re Iowa Mfg. Co. of Cedar Rapids, Iowa,* 747 F.2d 462, 463-64 (8th Cir. 1984); *Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 n.2 (2d Cir. 1980); *Self v. General Motors Corp.*, 588 F.2d 655, 658 (9th Cir. 1978); *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 546 (5th Cir. 1967); *American Dredging Co. v. Atlantic Sea Con, Ltd.,* 637 F. Supp. 179, 181-82 (D.N.J. 1986); *Pravic v. U.S. Industries-Clearing,* 109 F.R.D. 620, 621-22 (E.D. Mich. 1986).

The basis for the voluntary-involuntary rule frequently is identified as a narrowly pragmatic one, namely, ensuring that a federal court does not exercise jurisdiction in a removed case on the basis of an involuntary dismissal of a diversity-defeating defendant that is susceptible to reversal on appeal in state court. As one court put it, "An involuntary dismissal of [a] non-diverse party in a state court action should not lead to removal of the action to federal court if the complete diversity just created by the dismissal might be destroyed by an appeal and reversal of the state court's decision." *Atlanta Shipping Corp. v. International Modular Hous.,* Inc., 547 F. Supp. 1356, 1360 n.8 (S.D.N.Y. 1982). *See also Quinn,* 616 F.2d at 40

n.2 (the purpose of the voluntary-involuntary rule "is to protect against the possibility that a party might secure a reversal on appeal in state court of the non-diverse party's dismissal producing renewed lack of complete diversity in the state court action[.]"); *LGP Gem, Ltd. v. Cohen,* 636 F. Supp. 881, 883 (S.D.N.Y. 1986) ("[T]he finality of the dismissal [of a non-diverse defendant], not the plaintiff's participation in it, is the factor that determines removability."); *Burke v. General Motors Corp.*, 492 F. Supp. 506, 508 (N.D. Ala. 1980) (the voluntary-involuntary rule "is premised upon the assumption that voluntary actions of the plaintiff which remove a party from a case are final" and thus not subject to reversal on appeal so as to divest a federal court of jurisdiction on removal); *Ennis v. Queen Ins. Co. of Am.*, 364 F. Supp. 964, 966 (W.D. Tenn. 1973) ("The reason for the 'voluntary dismissal' rule is based on judicial efficiency. The voluntary dismissal of a resident defendant is not appealable. Such a dismissal finally determines who are the parties to the action in a state court proceeding immediately prior to removal to a federal court. The involuntary dismissal of a resident defendant, however, is appealable. Thus, an involuntary dismissal would involve the possibility of duplication and expense of an appeal being heard in state courts and the same proceeding being before the federal courts at the same time, if such a case could be removed to the federal courts.").

In fact, the foundation of the voluntary-involuntary rule is both broader and more fundamental. Specifically, the purpose of the rule is to protect a plaintiff's right to choose his or her forum. *See Kettelhake*, 236 U.S. at 315-16 (applicability of the voluntary-involuntary rule does not depend on the finality of a state-court order dismissing a diversity-defeating party and thus ostensibly giving rise to federal subject matter jurisdiction); *Lathrop, Shea & Henwood Co. v. Interior Constr. & Improvement Co.*, 215 U.S. 246, 251, 30 S. Ct. 76, 54 L. Ed. 177 (1909) (same); *Kansas City Suburban Belt Ry. Co. v. Herman,* 187 U.S. 63, 69, 23 S. Ct. 24, 47 L. Ed. 76 (1902) (same); *Whitcomb v. Smithson*, 175 U.S. 635, 638, 20 S. Ct. 248, 44 L. Ed. 303 (1900) (same). The underlying purpose of the voluntary-involuntary rule is, quite simply, "to protect [a] plaintiff's choice of forum as long as [the plaintiff] wants it protected." *Ford Motor Credit Co. v. Aaron-Lincoln Mercury*, 563 F. Supp. 1108, 1117 (N.D. Ill. 1983). See also *Ushman v. Sterling Drug, Inc.*, 681 F. Supp. 1331, 1337 (C.D. Ill. 1988) (noting that, under the "majority rule" regarding the vo-luntary-involuntary rule, "the purpose of the rule is to protect [a] plaintiff's forum," and holding that "removal would not be allowed in this case [under the voluntary-involuntary rule] even if the state court proceedings were final."); *Jenkins v. National Union Fire Ins. Co. of Pa.*, 650 F. Supp. 609, 614 (N.D. Ga. 1986) (quoting *Alexander*, 246 U.S. at 282)

("What emerges from an examination of the Supreme Court cases on the voluntary-involuntary rule is the conclusion that the rule is not based upon an appealability/finality rationale but upon a policy of favoring the plaintiff's 'power to determine the removability of his case.'"); *Vidmar Buick Co. v. General Motors Corp.,* 624 F. Supp. 704, 706 (N.D. Ill. 1985) ("The underlying purpose of the voluntary/involuntary rule ... is ... to protect [a] plaintiff's choice of forum[.]").

*Vogel v. Merck & Co, Inc.,* 476 F.Supp.2d 996, 1002-04 (S.D. Ill. 2007).

Obviously, Bayer's Motion to Dismiss Garner Land and Little Twist was vigorously opposed by Plaintiffs.    Over Plaintiffs' objection, Judge Whiteacre granted Bayer's Motion.  Thus, there was no voluntary action by the Plaintiffs' creating diversity jurisdiction.

9.    For all of the above and foregoing reasons, this case should be remanded immediately to the Circuit Court of Lonoke, County Arkansas so that trial can commence as scheduled during this special 30 day setting.

Respectfully submitted,

/s Paul Byrd
PAUL BYRD
HARE, WYNN, NEWELL & NEWTON, L.L.P.
A Limited Liability Partnership
Metropolitan National Plaza
4220 North Rodney Parham Road
Little Rock, Arkansas 72212
(501) 225-5500

JAMES J. THOMPSON, JR.
NOLAN E. AWBREY
HARE, WYNN, NEWELL & NEWTON, L.L.P.
A Limited Liability Partnership
The Massey Building
2920 Third Avenue North
Birmingham, Alabama 35203
(205) 328-5330

JERRY KELLY
KELLY LAW FIRM
118 N. Center Street
P. O. Box 500
Lonoke, Arkansas 72086
Phone (501) 676-5770

     and

R. Margaret Dobson
DOBSON LAW FIRM
206 South Main St.
Sheridan, Arkansas  72150

Attorneys for the Plaintiffs

By:  /s Paul Byrd_____
     Paul Byrd, A.B.A.# 85020

## CERTIFICATE OF SERVICE

I, Paul Byrd, do hereby certify that a true and correct copy of the foregoing has

been served via the court's electronic filing system, this 17th day of March, 2010, upon:

Scott Irby
Edwin L. Lowther, Jr.
Gordon S. Rather, Jr.
WRIGHT, LINDSEY & JENNNINGS
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201

Mark E. Ferguson
Bartlit Beck Herman Palenchar & Scott, LLP
54 West Hubbard Street,
Chicago, Illinois 60610.

Eric R. Olson,
Lester C. Houtz
John M. Hughes
Glenn Summers
Bartlit Beck Herman Palenchar & Scott, LLP
1899 Wynkoop, 8th Floor,
Denver, CO 80202.

William F. Goodman, III,
Frank A. Wood, Jr.,
Douglas J. Gunn
Joseph J. Stroble
Watkins & Eager PLLC
400 E. Capitol Street, Suite 300,
Jackson, Mississippi, 39201

Larry Cook
200 Westport Drive
P. O. Box 200
Cabot, Arkansas 72023

Richard W. Ellis
ELLIS & WINTERS, LLP
P.O. Box 33550
Raleigh, North Carolina 27636

_/s Paul Byrd_____
Paul Byrd